UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY JOSEPH HART,

    Petitioner,

          v.

BLAINE LAFLER,

    Respondent.
                                      /

CASE NO. 4:06-CV-11796
JUDGE PAUL V. GADOLA
MAGISTRATE JUDGE PAUL J. KOMIVES

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . 3
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        1.    *Habeas Review of Evidentiary Claims Generally* . . . . . . . . . . . . . . . . . . . . . 8
        2.    *Evidence of Prior Bad Acts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        3.    *Confrontation Clause and Rape Shield Law Evidence* . . . . . . . . . . . . . . . . 10
    E.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.    *Procedural History*

    1.    Petitioner Anthony Joseph Hart is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

    2.    On March 17, 2004, following a jury trial, the Crawford County Circuit Court convicted

petitioner of third degree criminal sexual conduct (CSC-III), MICH. COMP. LAWS § 750.520d(1)(a). On February 9, 2005, the court sentenced petitioner as a habitual fourth offender under MICH. COMP. LAWS § 769.12 to a term of 12 to 30 years' imprisonment.

3. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I. ADMISSION OF UNRESPONSIVE TESTIMONY ALLEGING THAT DEFENDANT HAD COMMITTED PRIOR BAD ACTS VIOLATED HIS RIGHT TO A FAIR TRIAL. SPECIFICALLY, THE TRIAL COURT ALLOWED UNSOLICITED TESTIMONY THAT THE DEFENDANT "HAD DONE IT IN THE PAST" AND WOULD "DO IT IN THE FUTURE."
>
> II. THE TRIAL COURT ERRED BY BARRING THE DEFENDANT FROM ASKING THE COMPLAINANT WHETHER SHE HAD TOLD A WITNESS ABOUT A "SIMILAR INCIDENT" WITH ANOTHER PERSON. THE TRIAL COURT INCORRECTLY ASSUMED THIS QUESTIONING WAS BARRED BY MICHIGAN'S RAPE SHIELD LAW (MICH. COMP. LAWS § 750.520(j)), BECAUSE THIS QUESTIONING WAS NOT EVIDENCE OF THE COMPLAINANT'S PRIOR SEXUAL ACTIVITY, BUT MERELY QUESTIONING TO IMPEACH THE WITNESS.

The court denied the first claim because although it was plain error to admit the testimony, it did not affect the defendant's substantial rights. Furthermore, defendant did not object to the testimony, and therefore did not preserve the issue for appeal. The court also denied the second claim, finding that the rape-shield law is applicable to impeachment evidence. The court affirmed petitioner's conviction and sentence. *See People v. Anthony Joseph Hart*, No.255453, 2005 WL 2574432 (Mich. Ct. App. Oct. 13, 2005) (per curiam) (unpublished).

4. Petitioner sought leave to appeal these issues to the Michigan Supreme Court, which denied his application for leave to appeal. *See People v. Anthony Joseph Hart*, 474 Mich. 1093, 711 N.W.2d 57 (2006).

5. Petitioner, proceeding *pro se,* filed the instant application for a writ of habeas corpus

on April 10, 2006. As grounds for the writ of habeas corpus, he raises the two claims that he raised in the state appellate courts.

6. Respondent filed his answer on October 19, 2006. He contends that petitioner's claims are without merit.

B. *Factual Background Underlying Petitioner's Conviction*

The prosecution claimed that petitioner had sexual intercourse with Aleisha Huizar, the complainant, then age 15, on the morning of January 10, 2003, at her home at 9376 Grayling Road in Crawford County. Petitioner claimed he did not have sex with her. Testimony came from the complainant, her mother (Denise Boks) and several other witnesses.

The victim testified that petitioner visited every day and occasionally stayed overnight. Trial Tr., Vol. I, at 300. In January, her mother was gone overnight for her grandmother's surgery. That night the victim, her brother Matt, and petitioner stayed in the house. Petitioner's girlfriend, Kim Ockerman, Ockerman's children, and the victim's other siblings were gone. Trial Tr., Vol. I, at 303. The victim testified that normally she took the bus to school, but on January 10, 2003, she woke up too late. Petitioner took Matt to school while the victim's clothes were in the dryer. Trial Tr., Vol. I, at 303. The victim testified that as she was sitting on the couch, waiting for her clothes to dry, petitioner sat next to her. He put his hand on her upper leg. She moved away but stayed on the couch. Trial Tr., Vol. I, at 305. He stood up and unbuttoned his pants- he was not wearing underwear. Trial Tr., Vol. I, at 309. The victim saw petitioner's penis. Trial Tr., Vol. I, at 310. At this point, the witness preferred to write her answers, which were then introduced as Plaintiff's Exhibits 1, 2, 3, and 4. Through the exhibits, the victim testified that petitioner pulled her pants and underwear down below her knees. Trial Tr., Vol. I, at 321-22. Petitioner leaned over her and opened her legs with his hand, then inserted his penis in her vagina. She testified that she could feel his penis inside her vagina. The victim did not say anything to

3

him and claimed she was too scared to resist. Trial Tr., Vol. I, at 330. The victim testified that Ockerman arrived home and petitioner jumped up, pulled his pants on, and went to the door. Trial Tr., Vol. I, at 331. He waited until the victim's pants were up before he opened the door. Trial Tr., Vol. I, at 331. Ockerman asked the victim if she wanted to take her to school. The victim said yes and went with her to school. Trial Tr., Vol. I, at 332. Petitioner did not wear a condom, and the victim did not feel any ejaculate inside her. Trial Tr., Vol. I, at 333-34. The victim testified that she was too scared to tell anyone what had transpired, but eventually told her mother, Ockerman, her boyfriend Matt Root, and her brother Tyler. Trial Tr., Vol. I, at 334.

On cross-examination, the victim said she had written more than one statement for the police, one of which said she rode with petitioner and her brother, Matt, to school. Trial Tr., Vol. II, at 14. At this point, petitioner's counsel asked the victim if she had told Ockerman that someone else had "done something bad" to her. The prosecution objected, arguing that the evidence was barred by Michigan's rape-shield law. Trial Tr., Vol. II, at 27-28. The trial court agreed and forbade that line of questioning. The victim next identified letters she wrote to petitioner while he was in jail on unrelated charges. The letters were introduced as Exhibits 6 and 7, dated respectively January 18, 2003 and January 23, 2003. Trial Tr., Vol. II, at 52. In one letter to petitioner, the victim wrote "Love forever. . . stay strong. . . I miss you a lot. . . My mom wants me to turn Johnny in, but I don't want to deal with the cops right now." Trial Tr., Vol. II, at 63. The victim testified that she did not know whether she told anyone that the incident with petitioner did not happen. Trial Tr., Vol. II, at 58. She did not tell anyone that someone had told her to tell people that the rape had happened. Trial Tr., Vol. II, at 59. The victim did admit that her mother wanted her to "press charges," and that her mother "tricked" her into disclosing what had happened. Trial Tr., Vol. II, at 60. The victim admitted that it could not be true that she both had been forced to have sex, and that the sex was voluntary. Trial Tr., Vol. II, at 70.

4

Matt Huizar, the victim's brother, testified that on the morning of January 9 or 10, 2003, he smoked marijuana with petitioner and the victim. Trial Tr., Vol. II, at 79. He testified that he, petitioner, and the victim all drove to school. Only Matt stayed at school, while petitioner and the victim returned home to retrieve her clothes from the dryer. Trial Tr., Vol. II, at 81.

Kim Ockerman, petitioner's girlfriend, testified that the victim called petitioner "Uncle Tony". Trial Tr., Vol. II, at 127-28. She testified that sometime in January 2003, she went to the Boks' home. She knocked on the door and entered. Petitioner was cooking in the kitchen, and the victim was in her pajamas. Trial Tr., Vol. II, at 134. Ockerman took the victim to school. The victim did not talk to her about anything happening between her and petitioner. Trial Tr., Vol. II, at 135-36. Ockerman testified that in late March or early April, the victim came to Ockerman's workplace, stating that she "wasn't pressin' charges on [petitioner] because it never happened and her mom was makin' her do it." Trial Tr., Vol. II, at 145.

Shawn Gleason testified that the victim's mother wanted the victim to make false accusations against petitioner and that the victim did not want to testify against him. Trial Tr., Vol. II, at 173.

Denise Boks, the victim's mother, testified that she lived with her four children, including the victim, who turned 16 on November 18, 2003. Trial Tr., Vol. I, at 282. Boks had known petitioner for 20 years. In January 2003, Kimberly Ockerman and her three children lived with Boks. Petitioner was Ockerman's boyfriend. He was a frequent guest at the Boks' home. Trial Tr., Vol. I, at 283. In January 2003, Boks went to Midland and stayed overnight while her mother had surgery. Ockerman stayed at home with three of the Boks' children, including the victim. She testified that on February 4, 2003, three or four days after Boks returned from Midland, nothing was unusual at home. However, several weeks later she asked the victim if anything happened between her and petitioner while she was in Midland. Boks testified that the victim started crying and told her about the rape. Trial Tr., Vol. I, at

5

289. She testified that she argued with Ockerman, who accused the victim of lying about the rape. Trial Tr., Vol. III, at 17. Boks testified that although it was her idea to "press charges," the victim did not argue about it. Trial Tr., Vol. III, at 18. Boks then testified that she told the victim that "[petitioner] had done it in the past, and that there was a possibility that he would do it in the future." Trial Tr., Vol. III, at 18. Petitioner did not object to the admission of this statement during the trial. Boks testified that Ockerman and petitioner's sister would drive by the Boks house and yell obscenities. She testified that her argument with the victim was over the use of the phone. Trial Tr., Vol. III, at 18.

Petitioner was convicted as charged. His motion for a new trial was denied. His motion for resentencing was granted. He was sentenced to prison for 12 to 30 years.

C.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the

benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.   *Analysis*

Petitioner raises two claims challenging the trial court's evidentiary rulings. First, he contends that the court erred by admitting testimony that referred to his prior bad acts. Second, he contends that the trial court violated his Sixth Amendment right to confront the witnesses against him when it applied Michigan's rape-shield law, preventing petitioner from questioning the victim regarding her allegations that an unidentified individual may have previously raped or "did something bad" to her. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.   *Habeas Review of Evidentiary Claims Generally*

Habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to

8

the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2. *Evidence of Prior Bad Acts*

Petitioner contends that the trial court erred by permitting the prosecutor to introduce unsolicited testimony regarding petitioner's prior bad acts. The prosecution did not specifically discuss petitioner's prior offenses. However the victim's mother Denise Boks testified that she had explained to her daughter that petitioner "had done it in the past," and that there was a possibility that he would "do it in the future." Boks did not elaborate on the meaning of "it." Trial Tr., Vol. III, at 18. Petitioner did

9

not object to this testimony at trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Admission of the prior bad acts evidence did not deny petitioner a fair trial. A habeas court is not entitled to review state court interpretations of state law. *Estelle*, 502 U.S. at 67-68. Even if the trial court improperly admitted prior bad acts evidence under Michigan Rules of Evidence 404(b), petitioner is not entitled to habeas relief unless this action denied him a fair trial. Both the Supreme Court and the Sixth Circuit have repeatedly held that admission of evidence of prior bad acts which is relevant in the defendant's trial does not deny a fair trial. *Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). Petitioner argues that he was denied a fair trial because admission of the prior bad acts evidence tipped the scales in favor of his conviction. Nonetheless, according to the Michigan Court of Appeals, which applies a less stringent standard than a federal habeas court, admission of this evidence did not affect petitioner's right to a fair trial. The court found that although the trial court plainly erred by admitting this evidence, it did not affect defendant's substantial rights. *Hart*, 2005 WL 2573342, at *2. The Michigan Court of Appeals' determination was reasonable. Boks' statement that she told the victim that petitioner "had done it in the past, and that there was a possibility that he would do it in the future." was unsolicited. Trial Tr., Vol. III, at 18. The prosecution did not mention this ambiguous statement after Boks' testimony. Boks' statement was not a keystone of the prosecution's case. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    3.    *Confrontation Clause and Rape Shield Law Evidence*

Petitioner contends that the trial court erred by ruling that the Michigan rape-shield law limited

his cross-examination of the victim. At trial the parties agreed that petitioner could ask the victim if she had written a letter to petitioner stating, "[M]y mom wants me to turn Johnny in." Trial Tr., Vol. II, at 32-34. However, the prosecution objected when petitioner sought to question the victim about another person "doing something bad to [her]. . . or with [her]." Trial Tr., Vol. II, at 20. Petitioner argued that this questioning was necessary to demonstrate the victim's lack of credibility, by demonstrating that she had initially accused the unidentified "Johnny" of the rape, and then changed her story. The trial court, however, held that this evidence was barred under Michigan's rape-shield law, because it pertained to the victim's prior sexual conduct. Trial Tr., Vol. II, at 27. The Michigan Court of Appeals agreed with the trial court's decision. The court held that the rape-shield statute applies to impeachment evidence. *Hart,* 2005 WL 2573342, at *2. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A rape-shield statute is "designed to protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior." *Michigan v. Lucas,* 500 U.S. 145, 146 (1991). Michigan's rape-shield law provides:

> Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g [the sexual conduct offense provisions] unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) evidence of the victim's past sexual conduct with the actor;
> (b) evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

MICH. COMP. LAWS § 750.520j(1). The statute further provides that, if a defendant seeks to introduce evidence under (a) or (b), he must give notice of his intent to do so within ten days of the arraignment. MICH. COMP. LAWS § 750.520j(2). However, notice is not an issue in this case. The U.S. Supreme

Court held that rape-shield statutes are not *per se* unconstitutional. *Lucas,* 500 U.S. at 146.

The majority of petitioner's brief argues that the trial court incorrectly applied § 750.520j(1). However the nuances of state rape-shield statutes are not questions of law appropriate for habeas review. Rather, there must be a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254 (d)(1, 2). Under this standard, petitioner's only avenue is to argue that exclusion of the rape-shield evidence denied him his Sixth Amendment right to confront witnesses against him.

The Confrontation Clause states "In all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Supreme Court has recognized limits within the Confrontation Clause. First, a denial of the right to confront an adverse witness is not *per se* a violation of a defendant's rights. The Supreme Court has identified some "constitutional errors–such as denying a defendant the assistance of counsel at trial, or compelling him to stand trial before a trier of fact with a financial stake in the outcome–are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). However, "the denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case." *Id.* at 682. Therefore, the habeas court cannot find a violation of Confrontation Clause rights without giving regard to the effect that violation will have on the outcome of the trial and the prejudice against the defendant. Second, the Supreme Court has held that "trial judges retain wide latitude. . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or

interrogation that is repetitive or marginally relevant." *Van Arsdall,* 475 U.S. at 677.

Despite its limits, the Confrontation Clause may still be a valid means to gain habeas relief in certain circumstances. In *Davis v. Alaska*, the Court stated there are two methods to impeach or discredit a witness; a general attack on credibility, such as evidence of a prior criminal conviction, and a more particular attack, revealing "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." 415 U.S. 308, 316 (1974). In his concurring opinion, Justice Stewart emphasized that the *Davis* Court "neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination" concerning past convictions. *Davis*, 415 U.S. at 321 (Stewart, J., concurring). The Sixth Circuit elaborated on the distinction between general and particularized attacks, adopting Justice Stewart's position that the Confrontation Clause protects only particularized attacks on bias and motivation, not general attacks on a witness's credibility:

> [A]lthough *Davis* trumpets the vital role cross-examination can play in casting doubt on a witness's credibility, not all conceivable methods of undermining credibility are constitutionally guaranteed. In particular, the *Davis* Court distinguished between a "general attack" on the credibility of a witness–in which the cross-examiner "intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony"–and a more particular attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand. . . [c]ourts after *Davis* and *Van Arsdall* have adhered to the distinction drawn by those cases and by Justice Stewart in his concurrence–that cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not.

*Boggs v. Collins,* 226 F.3d 728, 736-37 (6th Cir. 2000) (quoting *Davis*, 415 U.S. at 316); *see also*, *Quinn v. Haynes*, 234 F.3d 837, 844-45 (4th Cir. 2000); *Reiger v. Christensen*, 789 F.2d 1425, 1433 (9th Cir. 1986).

The trial court's exclusion of the rape-shield evidence did not compromise petitioner's

Confrontation Clause rights because he sought to introduce the evidence as a general attack on the victim's credibility, rather than as a particularized attack demonstrating bias or motivation to testify against petitioner. Petitioner sought to show that the victim had changed her story, a general attack which does not comprise a constitutional violation. Petitioner did not seek to question the victim on her possible prejudices. He only questioned her regarding whether she had said that someone else "did something bad to her." In addition, petitioner had the opportunity to fully pursue the issue of the victim's credibility and her motivation for testifying against him. In *Van Arsdall*, the Supreme Court held that the trial court violated the defendant's constitutional right to confrontation because it prohibited *all* inquiry into the possibility that a witness was biased based on the State's dismissal of pending charges against that witness. 475 U.S. at 679. Here, in contrast, petitioner had the opportunity to challenge the victim's credibility, despite the suppression of the rape-shield evidence. Petitioner submitted a letter from the victim, which stated "Love always...Love forever" and "[m]y mom wants me to turn Johnny in, but I don't want to deal with the cops right now." Trial Tr., Vol. II, at 64. The victim admitted that her mother wanted her to "press charges" but that the victim herself did not want to, and that her mother "tricked" her into disclosing the rape. Trial Tr., Vol. II, at 60. The victim admitted that it could not be true that she was both forced and the sex was voluntary. Trial Tr., Vol. II, at 70. Ockerman, petitioner's girlfriend, testified that the victim "wasn't pressin' charges on [petitioner] because it never happened and [Boks] was makin' her do it." Trial Tr., Vol. II, at 145. Overall, the trial court did not prevent petitioner from litigating the issue of the victim's credibility and her possible motivations or biases.

Furthermore, a restriction on cross-examination does not violate the Confrontation Clause unless a "reasonable jury might have a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall,*

475 U.S. at 680. In petitioner's case, a reasonable jury may not necessarily have had a "significantly different impression" of the victim's testimony, based on her admission that she stated someone else "did something bad to her." The jury could have drawn a number of inferences from this vague statement, especially because petitioner failed to demonstrate that the two stories were inconsistent. For instance, the Michigan Court of Appeals pointed out that she may have been assaulted on a separate occasion and that this is to what "did something bad to me" referred . *Hart*, 2005 WL 2573342, at *2.

Petitioner could argue that the rape-shield evidence, aggregated with other evidence, was necessary to show that the victim and her mother were biased and therefore could have changed the outcome of the trial. However, "the focus of the Confrontation Clause is on individual witnesses. . . the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial." *Van Arsdall,* 475 U.S. at 680. Therefore even if the line of questioning which the trial court forbade under the rape-shield law was part of a comprehensive strategy to show bias or motivation, petitioner is still not entitled to habeas relief.

Finally, if the rape-shield evidence petitioner sought to admit was irrelevant, the trial court certainly did not deprive him of his Confrontation Clause rights. The Sixth Circuit has held that the exclusion of irrelevant testimony does not violate petitioner's Sixth Amendment right to confront the victim. *See Gordon v. Morgan,* 27 Fed. Appx. 528, 530 (6th Cir. 2001) (internal citations omitted) (noting that the Sixth Circuit "has consistently held that rape shield laws that exclude irrelevant evidence do not violate a criminal defendant's right of confrontation."). It is questionable whether the vague statement that "someone else did something bad to me" would have been relevant to this case.

Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Conclusion*

In view of the foregoing, the Court should conclude that the court of appeals's resolution of petitioner's evidentiary claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III. <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

        s/Paul J. Komives
        PAUL J. KOMIVES
        UNITED STATES MAGISTRATE JUDGE

Dated: <u>7/26/07</u>

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 26, 2007.

                                  s/Eddrey Butts
                                  Case Manager